notes of the corporation were due when the petition was filed. But, in regard to all of them, as well as to the note held by the petitioner, I do not think the evidence makes out a case of the stoppage or suspension and non-resumption of payment of the notes, within the sense of the act.

When a person fails generally to meet his commercial paper according to the usual course of business, and suffers not some, but all of it, as it matures, to go to protest, and so comes to a general suspension, because unable to proceed further with his business, he is undoubtedly within the clause, the suspension continuing for fourteen days. But, on the other hand, the clause ought not to be used to enable a creditor to collect an ordinary debt on commercial paper, where the circumstances show that, although the paper is not paid, though due, there has been no stoppage or suspension of payment of the commercial paper of the debtor, within the meaning of the clause. In such case the ordinary remedy furnished through a suit to collect the note, is all that the creditor is entitled to. In re Compton [Case No. 3,940]. It is not a stoppage or suspension within the clause, when a sufficient excuse is shown why the paper was not paid; and, even though the suspension may have continued for fourteen days, yet a bona fide denial of liability on the paper in respect to which the suspension occurs is such an adequate legal excuse, that a person ought not to be adjudged a bankrupt solely for suspending for fourteen days on the paper, even though, on investigation, the bankruptcy court may be of opinion that, in fact, the debtor was liable on the paper. See Davis v. Armstrong [Id. 3,624]; In re Thompson [Id. 13,936]; In re Hollis [Id. 6,621]. The true view on this subject, is, in my judgment, that laid down in McLean v. Brown [Id. 8,880], by Judge Treat—that the suspension referred to in the act is a general suspension of commercial paper, not the refusal to pay paper in respect to which liability is denied; that the bankruptcy court will not sit to try the validity of the reasons alleged for the non-payment of the paper in respect to which the liability is denied; that it is not a court for the mere collection of debts; that each case must be considered by itself in connection with the circumstances surrounding it; but that, when a party fails to pay his paper for want of means, and continues unable to pay it, he has suspended, within the meaning of the act. It by no means follows, that a debtor may not, under certain circumstances, be considered as having really suspended payment generally of his commercial paper, although but a single piece of paper is shown to have lain over unpaid for fourteen days. On the other hand, the court must guard against being imposed upon by a denial of liability which is altogether sham, and not made in good faith. The denial of liability may, however, be founded on reasons which are not valid, and which would fail as a defence in a direct action on the paper, and yet the denial may be made in good faith, in such wise that the non-payment cannot be regarded as a stoppage or suspension, within the act.

In the present case, it is not shown that the corporation failed for want of means to pay the note held by the petitioner and the other paper referred to, nor is it shown that it was insolvent when the petition was filed. It is not alleged to have preferred any creditor, when insolvent, nor is it alleged to have committed any other act of bankruptcy than the suspension of payment for fourteen days of its commercial paper. Although subject to the supervision of the authorities of the state created for the purpose of investigating the affairs of insurance corporations and winding them up when insolvent, no proceedings had been taken against it as an insolvent institution, by the state authorities. Within a week prior to the maturity of the note held by the petitioner, the former president of the corporation resigned and a new president took his place. The affairs of the corporation seem to have been in much confusion, and its books were not kept in such form as to afford the information which they ought to have afforded in regard to its business. Its accounts had not been kept separate from the accounts of its former president, and, without imputing any misfeasance or malfeasance to any person, it is not too much to say, that the information, and want of information, on the part of the new president, in regard to all the commercial paper referred to, and its consideration, and his views and those of his associates, honestly entertained, as the proof shows, in regard to the liability of the corporation to pay the same, were such that the failure to pay it, and the continuance of such failure down to the time of the filing of the petition, cannot be regarded as a stoppage or suspension and non-resumption of its payment, within the act.

The petition is dismissed, with costs.

## Case No. 6,403.

### In re HERDIC.

[See 1 Fed. 242.]

HERETH (WITT v.). See Case No. 17,921.

## Case No. 6,404.

### HERIOT et al. v. DAVIS et al.

[2 Woodb. & M. 229.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

JURISDICTION—CITIZENS OF DIFFERENT STATES.

1. Where in a bill in equity the complainants, and part of the respondents, are described as of

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]